### INJURY TO TENANT DUE TO DEFECT IN PREMISES.

Court of Appeals for Hamilton County.

JOSEPH L. ROBERTS, CLARA B. SKAATS AND FANNIE F. GRIFFITH
v. JENNIE FULTON.

Decided, January 3, 1916.

*Landlord and Tenant—Sub-Tenant Injured by Breaking Through Floor—Liability of Landlord Can Not be Based on Covenant to Make Repairs.*

The fact that a landlord has covenanted to make needed repairs on property leased as an entirety does not render him liable either to the lessee or to a sub-lessee on account of injuries received through failure to make such repairs.

*E. S. Aston* and *Clyde P. Johnson*, for plaintiffs in error.
*Louis P. Pink*, contra.

GORMAN, J.

The defendant in error, Jennie Fulton, recovered a judgment against the plaintiffs in error in the court of common pleas.

She was a tenant in the premises known as No. 698 West Fifth street, occupying two rooms on the second floor thereof. She rented her rooms from one James P. Bolger, and Bolger rented the entire premises from plaintiffs in error at a rental of seventy dollars a month. Bolger and his father before him had rented the entire building during many years prior to the time that the cause of action arose. There was no written lease between Bolger and the plaintiffs in error, nor was there a written lease between Jennie Fulton and Bolger. By verbal agreement between Bolger and plaintiffs in error, for whom Joseph L. Roberts acted as agent, they were to make certain repairs on the building, such as repairing the roof, the floors and the woodwork generally in the building, but they were to do no papering or whitewashing; those repairs were to be made by Bolger.

There was a hallway running along the two rooms occupied by defendant in error, and from this hallway there was an alcove, or small hall or vestibule, from which a door led into each of Jennie Fulton's rooms. The only means of access to her rooms was through the large hallway into the small hallway or vestibule and thence into her rooms, the small hall or vestibule separating the two rooms. They were evidently so arranged that the two rooms might be rented out separately.

On the night of October 31, 1912, about three months after Jennie Fulton became a tenant in these two rooms, she had occasion to leave her rooms for the purpose of getting water from the hydrant at the end of the large hall on the floor on which her rooms were situated. As she passed out of one of her rooms into the small vestibule and just before she reached the large hall she broke through the floor, on account of the want of repair of one of the boards in the floor, and a nail protruding between the broken boards ran into her heel and resulted in serious injuries to her. She was confined to the hospital and in her house for quite a long time, and at the time of the trial the injuries were still manifest and it was probable that she was permanently injured.

It is claimed by plaintiffs in error that no liability rests upon them upon the above statement of facts, being in substance the

facts established in the trial of this case, and that therefore the judgment in favor of the plaintiff below should be set aside and held for naught.

This court is of opinion that there was no legal liability resting upon plaintiffs in error to the defendant in error, and that she was not entitled to recover, upon the state of facts shown by the record in this case.

We think this case is controlled by the case of *Burdick* v. *Cheadle,* 26 O. S., 393. Mrs. Fulton was not a tenant of Roberts, she did not rent from him, and there was no privity of estate between her and the plaintiffs in error. She was a tenant of Bolger, and for any injuries which she received because of the neglect to keep the premises in repair she must look to Bolger, and not to Roberts, for damages or compensation. The case of *Burdick* v. *Cheadle* has not been overruled by the Supreme Court and appears to be the law of this state, whatever may be the rule laid down in other states. In that case it was held in the syllabus that:

"The defendant, being the owner of a lot of ground, erected thereon a storehouse, and afterwards leased the storeroom and agreed with the lessee to construct therein cornices, shelvings and fixtures, in a secure, safe, convenient and proper manner for the sale of dry goods and groceries, and to keep the premises in good order. The fixtures put up under the agreement were unsafe and insecure from the want of sufficient fastening to the walls of the building—all of which was known to defendant, who, on request of the lessee, refused and neglected to repair. Afterward, and while the room and fixtures were in the possession of the lessee, the shelvings fell and injured the plaintiff, who was, at the time, in the storeroom as a customer of the lessee. *Held:* The facts stated do not constitute a cause of action against the defendant and in favor of the plaintiff."

To the same effect is the rule laid down in the case of *Shindelbeck* v. *Moon,* 32 O. S., 264.

These cases were approved by the Supreme Court in the case of *Stackhouse* v. *Close,* 83 O. S., 339; the court, Johnson, J., on page 351, uses this language:

"A lessor of a building is not liable to the lessee or others lawfully on the premises, for its condition, in the absence of actual or constructive concealment, or of any agreement, or of the violation of a duty imposed by statute. *Shinkle* v. *Birney,* 68 Ohio St., 328; *Burdick* v. *Cheadle,* 26 Ohio St., 393; *Shindelbeck* v. *Moon,* 32 Ohio St., 267."

The circuit court of this county, the predecessor of this court, in the case of *Schradski* v. *Butler,* decided April 26, 1913, affirmed the judgment of the court of common pleas, upon the authority of the opinion announced by the trial court on a motion for new trial, reported in 9 Ohio Law Reporter, 127.

But it is contended by counsel for defendant in error that the case of *Stackhouse* v. *Close* holds that the owner of premises is liable in a case similar to the one at bar. The case of *Stackhouse* v. *Close* is one in which Close, the owner, had leased the entire premises to the United States Coaster Construction Company, which company had sublet part of the premises for lodge purposes, and the plaintiff in the case, Mrs. Stackhouse, was injured in an elevator while going to the lodge in the building.

We think that case can be distinguished from the case at bar in that Mrs. Stackhouse was a member of the public, a third person, while Mrs. Fulton was not a member of the general public, but was holding under Bolger as a sub-lessee. Furthermore, in that case it was held that because the landlord reserved the control of the elevator and the right to make all repairs, and stipulated that no alterations or repairs could be made by the lessee without the consent of the owner, the owner thereby rendered himself liable jointly with the tenant or lessee, under the provisions of Section 4238-1, Revised Statutes, which provides that:

"—It shall be unlawful for any person, society, firm, agent, representative of any private or corporate authority or society, or any committee, commission or board acting under any authority whatsoever, to erect, or cause to be erected  *  *  *  in the state of Ohio any structure, room or place where persons are invited, expected or permitted to assemble, or for the purpose of entertainment, judgment, amusement, instruction, betterment,

treatment or care, or to make any addition to or alteration therein which shall in construction, arrangement or means of egress be dangerous to the health or lives of persons so assembled—''

and the Supreme Court held that the owner, by requiring no alterations, changes or repairs to be made without his consent or supervision, thereby retained such control over the building, and especially the elevator, as rendered him liable to third persons who had occasion to resort to the building for any purposes whatsoever.

In the case of *Burdick* v. *Cheadle, supra,* at page 397, the court says:

''The general rule of law undoubtedly is, that persons who claim damages on the account that they were invited into a dangerous place, in which they received injuries, must seek their remedy against the person who invited them. There is nothing in the relation of landlord and tenant which changes this rule.''

Applying this rule to Mrs. Fulton, under the facts disclosed by the record, it is apparent that she was a tenant of Bolger, in the building, not through any arrangement or agreement with the plaintiffs in error; she was invited and permitted to be there solely as the tenant of Bolger, and for any damages which she may claim on account of injuries received in the building she must seek for a remedy against the person who invited her there—Bolger.

It is true that the Supreme Court in this case of *Burdick* v. *Cheadle* has applied a different rule to third persons, the public generally, for it provides that:

''If they (the premises) be unsafe or unfit, it is the duty of the tenant to make them safe or to fit them for the intended use; and the landlord may reasonably expect that the tenant will do so.''

And on page 396 the court says:

"But in case a landlord undertakes with his tenant to keep the premises in repair, having thus reserved the control to the extent necessary for making repairs, his duty to the public in relation to the property is not affected by the lease, and he 're-mains responsible, under the doctrine· of the above .maxim, for defects arising from the want of repairs during the continuance of the lease.''

The maxim above referred to is the well known one: *"sic utere tuo ut alienum non laedas."* But this maxim applies, in the case of landlorad and tenant, to third persons who are strangers and not in the premises on invitation of the landlord.

In *Jones on Landlord and Tenant,* Section 592, this principle is stated:

"It may be stated as a general rule that a landlord, who has covenanted to repair, is not liable in tort for personal injuries resulting from the want of repair,'' citing numerous cases ·in support thereof, among others *Hanson* v. *Cruse,* 155 Ind., 176, and then proceeds: ''Such injuries are too remote to be·recov-ered as damages for the breach of contract, and the duties aris-ing from the relation of landlord and tenant are not increased by such a contract in respect to the duty of the landlord to pro-vide for the personal safety of the tenant.''

And again, in the same section, the author says:

"Ordinary damages for breach of a general covenant to keep the premises in repair are the expenses of repair and the loss of the premises while the party contracting was in default.''

*Tiffany on Landlord and Tenant,* Section 87, page 592 (10), lays down this rule:

''A question of difficulty has arisen in connection with a land-lord's covenant to repair, as to whether the tenant can recover, as against the landlord, for an injury to his person or to his property on the premises, which would not ·have occurred had the landlord complied with his covenant. Such injuries result-ing not directly from a breach of the contract, but from physi-cal conditions existing apart from the contract, which the con-tract merely undertook to eliminate, can not well be regarded

as a proximate result of the breach of the contract within the contemplation of the parties at the time of the making thereof. To allow a recovery for such injuries is to allow a recovery as for tort on account of a breach of contract. As has been remarked, there is no more reason for allowing such a recovery against a landlord than against any other person, a carpenter or contractor, for instance, who fails to carry out his contract to repair the premises.'' Citing *Tuttle* v. *Gilbert Mfg. Co.*, 145 Mass., 169.

There will be found cases which hold that a landlord who has leased the entire premises and has covenanted to make repairs is liable to third persons—the public—but these authorities are few and far between, and the great weight of authority holds the contrary rule.

In the case of *Schradski* v. *Butler*, Butler rented the premises to the sister of Mrs. Schradski, who was a member of the household. Butler promised to repair, failed to do so, and as a result of the failure, Mrs. Schradski was very severely injured. The common pleas court held in that case that the landlord, Butler, was not liable to Mrs. Schradski for the personal injuries sustained.

Without multiplying the authorities, we think that the law of this state is well settled that the owner of property is not liable where he leased the entire premises to a tenant and agrees to make repairs upon the premises, either to the tenant or sub-tenants or sub-lessees of the tenant. The mere fact that the landlord agrees to make repairs, does not put him in control of the premises. It is true he would have the right to resort to the premises for the purpose of making repairs, but that fact does not give him control of the premises any more than he would have control of the premises because he would have a right to resort to the premises for the collection of rent, inspection of the same, or any other lawful purposes. Bolger, in this case, was in entire control of the premises, and Bolger himself could not recover for injuries he might sustain by reason of the defect in the premises resulting from failure of the owner to keep the premises in repair under his agreement, and surely his sub-

tenant or sub-lessee, Mrs. Fulton, would have no higher or better right than her immediate landlord—Bolger.

If the law were not so well settled in this state on this question it might be instructive and useful to consider the decisions in other states. But the court is of the opinion that this case, in all its phases, is controlled by the case of *Burdick* v. *Cheadle* and other cases cited.

For the reasons stated, the judgment below is reversed and the cause remanded for further proceedings.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.